**PROGRESS BULK CARRIERS,**
Plaintiff,

v.

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., Defendant.**

No. 12 Civ. 264(ALC)(FM).

United States District Court,
S.D. New York.

Signed Feb. 21, 2014.

William Robert Bennett, III, Blank Rome LLP, New York, NY, for Plaintiff.

Peter Skoufalos, Patrick Robert O'Mea, Robert Jan Brown, Brown Gavalas & Fromm LLP, New York, NY, for Defendant.

## MEMORANDUM & ORDER

ANDREW L. CARTER, JR., District Judge.

### I. Introduction

Plaintiff Progress Bulk Carriers ("PBC") seeks indemnity from Defendant American Steamship Owners Mutual Protection and Indemnity Association ("American Club") under a mutual indemnity contract PBC was a party to for losses incurred by a third party's refusal to accept shipments of steel. Pursuant to a term of the contract, the claim was adjudicated in the first instance by the American Club's Board of Directors, who refused to indemnify PBC. PBC appealed the denial to this Court. In relevant part, the American Club moved to limit discovery to the record which was before the Board of Directors. PBC opposed the motion. This question was referred to Magistrate Judge Maas, who, in a well-reasoned order and opinion dated April 5, 2013, 939 F.Supp.2d 422 (S.D.N.Y.2013) (the "Order"), granted the American Club's motion. PBC now objects. For the reasons set forth below, the Court finds none of PBC's objections persuasive and, accordingly, affirms the Order in its entirety.

### II. Facts

The American Club guarantees its members—including PBC—indemnity for certain liabilities arising out of the operation of maritime vessels. A member's right to coverage is governed by the American Club's Rules and Guidelines ("Rules"). Claims under the Rules are subject to the Disputes Provision, which provides that any disputes as to coverage "shall in the first instance be referred to and adjudicated by the Directors [of the American

Club]." (ECF No. 16, Ex. B at 40–41.) The Directors evaluate each claim on a case-by-case basis under the Anti–Waiver Provision; "[n]o act, omission, course of dealing, forbearance, delay or indulgence by the Association in enforcing any of these Rules" has any binding effect on the Directors' determination of a particular case. (*Id.* at 39.)

PBC chartered a vessel from Far East Shipping Company ("FESCO") in 2002. In 2003, PBC subchartered the vessel to another member of the American Club, who used it to ship a cargo of steel to a Chinese importer. Between the time of the ship's departure from Venezuela and its arrival in China, the global steel market plummeted. When the ship arrived in China, the importer claimed the bills of lading were antedated and refused to accept the cargo. The importer then brought an action against FESCO in a local Chinese court for damages resulting from the antedated bills of lading. The court found that the bills of lading were indeed antedated and held FESCO liable for nearly $500,000. FESCO appealed the decision, but after several years without a ruling, both parties agreed to settle the case for $150,000 on August 15, 2008.

FESCO then entered into arbitration with PBC in London, seeking indemnity for the damages paid in the Chinese suit. On July 5, 2010, a tribunal found in favor of FESCO on the grounds that there was "no inaccuracy in the Bills of Lading that would have justified a valid rejection of the goods under the sale and purchase contract." (Am. Compl. ¶ 48.) This finding was in direct tension with the Chinese court's ruling on the matter.

PBC then sought coverage for the payment by submitting a claim to American Club. The Shipowner Claims Bureau (the "Bureau"), acting on behalf of the American Club, determined that the claim arose out of the issue of antedated bills of lading, which under the express terms of the contracts granted the reviewing body discretion in deciding whether to provide coverage. (ECF No. 16, Ex. B at 53.) The Bureau denied PBC's claim. PBC advised the Bureau that it planned on appealing the decision to the Board of Directors and requested advice on "the mechanics and timing of the procedure for evaluations." (ECF No. 16, Ex. D. at 1.) In response, the Bureau sent PBC lengthy instructions by email, in which it noted that the Board's determinations would be "final and binding." (ECF No. 16, Ex. E at 3.) PBC filed its appeal on March 22, 2011. The Board denied coverage on November 17, 2011, and PBC brought suit in this Court.

The American Club moved to limit discovery to the record that was before the Board during its decision-making process. In particular, the American Club sought to prevent PBC from (1) inquiring into American Club's adjudication of past similar claims and (2) deposing anyone other than the Board member who signed the decision denying PBC's claim. The American Club argued that because the Disputes Provision established a valid alternative dispute resolution ("ADR"), New York law required judicial review to be limited to the record before the Board. PBC opposed the motion, arguing that the Disputes Provision is ambiguous, and thus does not create a valid ADR. The question was referred to Magistrate Judge Frank Maas, who on April 15, 2013 granted the motion to limit inquiry to the record before the Board but denied the request to limit the number of depositions PBC could take. PBC filed a timely objection to the Order preventing discovery as to American Club's decisions in prior similar claims.

## III. Discussion

### A. *Standard of Review*

■ A district court may designate a magistrate judge to "hear and determine

any pretrial matter pending before the court...." 28 U.S.C. § 636(b)(1)(A). When reviewing the decision of a magistrate judge on a non-dispositive pretrial issue, a district court "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.* Discovery disputes are quintessential examples of such non-dispositive pretrial issues. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990) ("Matters concerning discovery generally are considered nondispositive of the litigation."); *see also Thai Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*, 924 F.Supp.2d 508, 511 (S.D.N.Y.2013) ("A magistrate judge's ruling on a nondispositive matter, including a discovery dispute, may be set aside only if the district court determines the ruling to be clearly erroneous or contrary to law.") (internal quotations omitted). Even where parties file timely objections, district courts only set aside parts of the order that are clearly erroneous or contrary to law. *See* Fed.R.Civ.P. 72(a). Thus, the Court has reviewed the Order for clear error.

### B. *The Decision and the Objections*

Magistrate Judge Maas found that the Disputes Provision in the contract established a valid ADR because it requires that any "difference or dispute shall in the first instance be referred to and adjudicated by the [Board]." (ECF No. 16, Ex. B at 40–41.) Giving the word "adjudicate" its plain meaning, Magistrate Judge Maas rejected PBC's argument that the submission to the Board was simply a necessary predicate to filing a lawsuit. (Order, 939 F.Supp.2d at 428.) Magistrate Judge Maas also rejected PBC's argument that a memorandum order in *Trident International, Ltd. v. American Steamship Own-*

*ers Mutual Protection and Indemnity Association, Inc.,* No. 05 Civ. 3947(PAC), is binding precedent, noting that the *Trident* court had not considered the applicable New York law for review of ADR decisions. (Order, 939 F.Supp.2d at 429–30.) PBC objects to Magistrate Judge Maas's decision on four grounds. I address each in turn.

### C. *Application*

■ PBC first argues that the terms of the Disputes Provision are ambiguous and thus do not create a valid ADR. Such a question, according to PBC, is subject to *de novo* review. In making this claim, however, PBC simply ignores the applicable standard of review imposed by 28 U.S.C. § 636(b)(1)(A). Both the cases PBC cites in support of this proposition involve appellate review of district court determinations, not the review of a magistrate judge's ruling in a nondispositive pretrial matter. *See Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002); *see also Shann v. Dunk*, 84 F.3d 73 (2d Cir.1996). Indeed, courts in this Circuit have routinely applied a clear error standard of review to a magistrate judge's nondispositive pretrial order even when the appellate standard of review for the underlying questions of law would be *de novo*. *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 982 F.Supp.2d 260, No. 09 Civ. 0118(VM), 2013 WL 6043928 (S.D.N.Y. Nov. 8, 2013) (reviewing a magistrate judge's pretrial nondispositive determination of choice of law for clear error, despite the fact that choice-of-law determinations are subject to *de novo* review at the appellate level); *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70 (N.D.N.Y. 2000) (acknowledging that questions of privilege are mixed questions of law and fact but applying a clear error standard of review to a magistrate's discovery order

under 28 U.S.C. § 636(b)(1)(A)). Here, Magistrate Judge Maas's findings as to the validity of the ADR provision were not clearly erroneous. Based on the email communication between PBC and the American Club and the use of the word "adjudicate" in the contract itself, Magistrate Judge Maas could correctly conclude that the parties intended to create a valid ADR provision and thus limits the scope of discovery in this case.

PBC next objects to the Order on the grounds that coverage should have been automatic, arguing that the Board had no discretion to deny coverage because PBC did not actually issue an antedated bill of lading. This question, however, has no relevance to the issue of limiting discovery, which was the subject of Judge Maas's order. Rather, it is an argument about the actual merits of the case. It is not clear error for the magistrate judge to refuse to upend previous determinations of the underlying matter on a discovery dispute. Further, as Judge Maas's order points out: "the Anti–Waiver Provision [of the Rules] prohibits any 'act, omissions, course of dealing, forbearance, delay or indulgence' regarding one claim from binding [American Club] with respect to another." (Order, 939 F.Supp.2d at 429.) Thus, the documents PBC seeks would be of no value in determining the merits of this case. Because the express terms of the Anti–Waiver Provision would render irrelevant the results of any discovery as to prior similar cases, the Court finds no clear error.

PBC also contends that Magistrate Judge Maas erred by refusing to follow *Trident International Limited v. American Steamship Owners Mutual Protection and Indemnification Association, Inc.,* No. 05 Civ. 3947(PAC), 2009 U.S. Dist. LEXIS 131353 (S.D.N.Y. Feb. 4, 2009). In *Trident,* defendants sought to limit discov-

ery in a maritime insurance case by analogizing the case to the federal ERISA context. Finding ERISA cases sufficiently distinguishable, the court rejected the argument. The *Trident* court specifically held that New York common law, not federal ERISA regulations, would govern the dispute. However, the *Trident* court did not go on to address what New York requires in the ADR context. While the *Trident* defendants argued that discovery should have been limited to the record before the decisionmaker, they cited no case law on the subject.

In the case at bar, however, Magistrate Judge Maas conducted a thorough review of New York law about ADR proceedings and found that courts are limited to the record before the ADR decisionmaker. (Order, 939 F.Supp.2d at 429.) PBC produces no evidence to the contrary, thus we find no clear error in Magistrate Judge Maas's analysis.

PBC's final objection is that it had no access to the record that was before the Board and thus, is at a disadvantage. The American Club disputes this, claiming that all relevant documents have been produced. This issue bears no relation to the scope of the protective order, however, as PBC will be permitted to engage in relevant discovery going forward. To the extent the record before the Board was previously unavailable to PBC, it can be remedied by simply producing the needed documents.

## IV. CONCLUSION

For the reasons set forth above, the Court finds none of PBC's objections persuasive and accordingly, adopts Magistrate Judge Maas's order in its entirety. Discovery shall be limited to the record that was before the Board of Directors. To the extent this record has not been made avail-

able to PBC, the American Club is hereby ordered to produce all relevant documents.

SO ORDERED.